UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re

|  |  |
|---|---|
| Frederick V. McMenimen, III | Chapter 7 |
|     Debtor | Case No. 12-10713-JMD |
|  |  |
| William K. Harrington, United States Trustee |  |
|     Plaintiff |  |
|  |  |
| v. | Adv. Proc. 12- |
|  |  |
| Frederick V. McMenimen, III |  |
|     Defendant |  |
| _____ |  |
|     Mark P. Cornell, Chapter 7 Trustee |  |
|     Interested Party |  |

**COMPLAINT FOR DENIAL OF DEFENDANT'S DISCHARGE PURSUANT TO
11 U.S.C. §727 (a)(2)(A), 11 U.S.C. §727(a)(3), 11 U.S.C. §727(a)(4)
AND 11 U.S.C. §727(a)(5)**

Plaintiff, William K. Harrington, United States Trustee, by his attorney, brings this

Complaint pursuant to 11 U.S.C. §§727(a)(2)(A), 11 U.S.C. §727(a)(3), 11 U.S.C. §727(a)(4),

and 11 U.S.C. §727(a)(5) seeking an Order denying the discharge of the Defendant, Frederick V.

McMenimen, III, and for such other relief as may be appropriate.

PARTIES

1.      Appointed by the United States Attorney General, William K. Harrington,

Plaintiff, is the United States Trustee for the Districts of Maine, Rhode Island, Massachusetts and

New Hampshire.  His address for the District of New Hampshire is Office of the United States

Trustee, 1000 Elm Street, Suite 605, Manchester, New Hampshire 03101.

2.      Defendant, Frederick V. McMenimen, III, is a Debtor in this Court following his

chapter 7 filing on March 6, 2012.  He has a last known address of 6 Pumpkin Circle, Exeter,

New Hampshire  03833.

3.      Mark P. Cornell is the chapter 7 trustee appointed to the McMenimen case by the United States Trustee.  He conducts business at 2 Greenwood Avenue, Concord, New Hampshire 03301.  He is an interested party in this proceeding against whom the Plaintiff seeks no relief.

## JURISDICTION

4.      This is an adversary proceeding in which the United States Trustee seeks an Order denying the discharge of the Defendant Frederick V. McMenimen, III.  It is a core proceeding. *See* 28 U.S.C. §157(b)(2)(J).

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157(a), 157(b)(2)(J) and 1334 and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire" dated January 18, 1994 (DiClerico, C.J.).

6.      This Complaint is timely filed as the deadline for filing actions under 11 U.S.C. §727 as most recently extended for the Plaintiff was set at November 30, 2012.  *See* Court Paper #94; Fed. R. Bankr. Proc. 4004.

## FACTS

7.      On March 6, 2012,[1] and with the assistance of experienced bankruptcy counsel, the Defendant filed a petition for relief under chapter 7 of the United States Bankruptcy Code in this Court stating that his debts were primarily business debts.  *See* Court Paper #1.

8.      The Defendant's bankruptcy petition, schedules, and statement of financial affairs were executed under penalty of perjury.

9.      According to his bankruptcy filing, the Defendant was unemployed.  His spouse,

---

[1] Although filed with this Court on March 6, 2012, the petition and accompanying schedules bore the electronic signatures of the Defendant dated March 1, 2012.

a nurse, did not join him in the bankruptcy filing.  *See* Schedule I.

10.      The Defendant listed assets valued at $730,000 consisting largely of his home in Exeter, New Hampshire valued at $575,000, a boat valued at $140,000 and a BMW valued at $9000.  *See* Schedule B.

11.      The Defendant's liabilities of $3.707 million included two mortgages, numerous liens and attachments on his residence, boat loan, credit card obligations, unpaid legal fees and other miscellaneous debts. The Defendant listed $403,020 in unsecured debt.  *See* Schedules A, B, D, E, and F.

12.      The Defendant stated his intention to surrender his home but retain his boat.  *See* Individual Debtor's Statement of Intention, Court Paper #1, p. 41.

13.      The Defendant stated he had $0 monthly income and $14,725 of monthly expenses.  *See* Schedules I, J.

14.      The Defendant further stated that he was aware of no increase or decrease in income reasonably anticipated to occur within the year following the filing of his petition.  *See* Court Paper #1, Schedule I, Line 17.

15.      The Defendant stated he had a checking account and savings account at Citizens Bank with a combined balance of $1200, and that he had closed an account at Federal Savings Bank in Portsmouth, New Hampshire.  *See* Schedule B2; SOFA ¶11.

16.      For a number of years prior to the Defendant's chapter 7 filing, he was employed as a registered financial advisor.

17.      Public records indicate that from approximately July 1, 2008 to August, 2011, the Defendant was a representative of Pruco Securities, LLC, an affiliate or subsidiary of Prudential

Financial, Inc.[2]

18.     The Defendant's two largest creditors listed on the petition were Ronald P. Passatempo, Trustee of the Samuel Pietropaolo Irrevocable Trust ("Passatempo"), and Susan Wagstaff ("Wagstaff").  Passatempo and Wagstaff each obtained attachments against the Defendant's home in Exeter, New Hampshire in the amount of $1.4 million and $1.0 million respectively.  *See* Schedule D; SOFA, ¶.

19.     Prior to the Defendant's chapter 7 filing, and following a two week jury trial in the Suffolk County Superior Court in Boston, Massachusetts, Passatempo obtained a judgment against the Defendant for *inter alia* fraud and misrepresentation.  According to Passatempo's pleadings with this Court, the judgment against the Defendant is now final, and is in excess of $1.8 million dollars.

20.     Following the verdict, Passatempo also obtained an Order of the Suffolk Superior Court on December 11, 2009 (Hinkle, J.) enjoining the Defendant from transferring any assets in excess of $2500 without notice to Passatempo.  The Order provided in part:

> "After hearing on December 8, 2009 on Plaintiffs' Emergency Motion to Enjoin Defendant Frederick V. McMenimen III from Transferring Assets and for Permission to Issue Post-Verdict Subpoenas, I hereby allow Plaintiffs' Motion and order as follows:
>
> **1. Injunction**
>
> McMenimen shall not spend, transfer or alienate any asset or part of any asset (including but not limited to money, funds, personal or real property) in which he has any interest of any kind (present or future, direct or indirect) and shall not allow any other party to do the same to any asset or part thereof to which McMenimen has any such interest, in any amount valued at or in excess of $2,500.00 without giving ten (10) days prior written notice to counsel  for Plaintiff."

*See* Exhibit A.

---

[2] At the §341 meeting on May 4, 2012 the Defendant testified that his last paycheck from Prudential was received in October of 2011.

21.     Both Passatempo and Wagstaff have each brought actions against the Defendant in this Court seeking to except their debts from discharge under 11 U.S.C. §523.  *See* Adv. Proc. 12-1103-LHK and Adv. Proc. 12-1107-LHK.

22.     American Express also filed an action against the Defendant seeking exception of its debt from discharge under 11 U.S.C. §523.   *See* Adv. Proc. 12-1082-LHK.[3]

*Defendant's Reported Income: 2012, 2011 and 2010*

23.     The Defendant stated that as of the date of the chapter 7 filing, March 6, 2012, he had earned $0 income from employment for 2012.  *See* SOFA ¶1.

24.     The Defendant stated that he earned income from employment of $130,369 in 2011.  *Id.*

25.     The Defendant stated that he earned income from employment of $115,835 in 2010.  *Id.*

26.     The Defendant's 2010 federal income tax return and W-2 from Prudential provided to the Plaintiff by the Defendant also reflect income earned by the Defendant in 2010 in the amount of $115,835.

27.     The Defendant stated that he earned no income in the two years prior to the filing other than from employment or operation of a business.  *See* SOFA ¶2.

*Payments to Creditors in the 90 Days and One Year Prior to Filing*

28.     In response to Question 3(a) of the Statement of Financial Affairs, the Defendant disclosed payments to only three (3) creditors within the ninety (90) days prior to the filing, reported as follows:

---

[3] The Defendant entered into a settlement with American Express shortly after American Express brought the action.  *See* Adv. Proc. 12-1082-LHK, Court Paper 4.

| Creditor | Dates of Payment | Amount Paid | Amount Still Owing |
|----------|------------------|-------------|--------------------|
| Bank of America | monthly | $3300 | $266,977.11 |
| Citizen's Bank | monthly | $200 | $ 59,927.76 |
| GCI Finance, Inc. | monthly | $2300 | $236.268.00 |

29.     In response to Question 3(b) of the Statement of Financial Affairs, for debtors whose debts are not primarily consumer debts, the Defendant responded "none" to the question requiring disclosure of payments or transfers to creditors made in the 90 days prior to the filing aggregating $5850 or more.

30.     In response to Question 3(c) of the Statement of Financial Affairs, the Defendant disclosed payments to one (1) "insider" creditor within the one year period prior to the filing, as follows:

| Creditor | Dates of payment | Amount Paid | Amount Still Owing |
|----------|------------------|-------------|--------------------|
| Agnes Sughrue[4] | November 2011 | $10,000 | $0 |

*Transfers Outside Ordinary Course of Business in Two Years Prior to Filing*

31.     In response to Question 10(a) of the Defendant's Statement of Financial Affairs, the Defendant responded "none" to the question requiring disclosure of transfers of property made outside the ordinary course of business in the two years prior to the bankruptcy filing.

32.     In response to Question 10(b) of the Defendant's Statement of Financial Affairs, the Defendant responded "none" to the question requiring disclosure of transfers of property within ten years prior to the commencement of the case to a self-settled trust or similar device of which the debtor was a beneficiary.

---

[4] The Defendant later identified Agnes Shugrue as his mother.

*§341 Meeting*

33.     The Defendant's §341 meeting of creditors was originally scheduled for April 10, 2012 but rescheduled with the consent of the chapter 7 trustee, Mr. Cornell, to May 4, 2012.

34.     On May 4, 2012 the Defendant appeared for the initial §341 meeting.

35.     On May 4, 2012 the chapter 7 trustee, Mr. Cornell, administered the oath to the Defendant, and verified the Defendant's social security number and identity.

36.     After being sworn, the Defendant affirmed that the testimony he would provide was under penalty of perjury.

37.     When asked by the chapter 7 trustee, Mark P. Cornell, whether the Defendant reviewed the petition before filing the Defendant responded as follows:

| | |
|---|---|
| Mark P. Cornell: | Your attorney has a copy of the bankruptcy schedules that you have signed. |
| Frederick V. McMenimen, III: | Yes, sir. |
| Mark P. Cornell: | Alright.  I'd like counsel to show him the signature page.   Is that your signature? |
| Frederick V. McMenimen, III: | Yes, sir |
| Mark P. Cornell: | And prior to signing these documents did you have the opportunity to review them? |
| Frederick V. McMenimen, III: | Yes, sir. |
| Mark P. Cornell: | Is everything in there in the petition and schedules true and correct to the best of your knowledge and belief? |
| Frederick V. McMenimen, III: | Yes, sir. |
| Mark P. Cornell: | Are there any errors or omissions that you'd like to bring to our attention at this time? |
| Attorney Feinman: | There is only, there is one where we've already amended the schedules to correct an address of a creditor. |

Mark P. Cornell:                    Other than what your attorney has said, are there any errors or
                                    omissions that you'd like to bring to our attention at this time?

Frederick V. McMenimen, III:   Not that I am aware of at this time.

38.      At that meeting the Defendant acknowledged that the 2009 and 2010 income tax

returns provided to Mr. Cornell were true copies of the returns filed with the Internal Revenue

Service but he had become aware that the 2009 and 2010 returns filed with the Internal Revenue

Service were not accurate.

39.      The Defendant testified that he was gathering the information for his accountant

to prepare amended returns.

40.      When asked at the May 4, 2012 §341 meeting how the Defendant knew he had

some "tax issues" for tax years 2010 and 2011 the Defendant declined to answer the question on

the grounds of attorney client privilege.

41.      The Defendant testified that he had not filed his 2011 federal income tax return,

and was on an extension.

42.      When asked by Mr. Cornell whether his response to Question 2 of the Statement

of Financial Affairs was accurate, the Defendant replied as follows:

Mark P. Cornell:                    You listed no other source of income from employment or
                                    operation of business under Question No. 2 for 200… and that
                                    would have been for 2010, 2011 and 2012 year to date.  Is that
                                    correct?

Frederick V. McMenimen, III:   Correct.

43.      The Defendant was asked for a second time in the May 4, 2012 examination by

the chapter 7 trustee, Mark Cornell, whether he had earned income outside of employment or

operation of business in the three years prior to the filing and the Defendant testified no.

44.     The Defendant was then asked about any income earned by the Defendant after the Defendant's bank accounts were frozen:

| | |
|---|---|
| Attorney Pietropaolo: | One of the things you testified to is that you alleged that under a particular lawsuit that your bank account was being frozen.  Is that correct? |
| Frederick V. McMenimen, III: | Yes. |
| Attorney Pietropaolo: | And as a result of that you passed income on that you received to your Dad.  Is that correct? |
| Frederick V. McMenimen, III: | Yes. |
| Attorney Pietropaolo: | And that income was paid to you by an employer? |
| Frederick V. McMenimen, III: | I don't recall. |
| Attorney Pietropaolo: | You don't recall where the income…. |
| Frederick V. McMenimen, III: | I don't recall the structure of the income at this time. |
| Mark P. Cornell: | Did you have any income from any source other than employment |
| Frederick V. McMenimen, III: | No. |
| Mark P. Cornell: | … in the last three years? |
| Frederick V. McMenimen, III: | No. |
| Attorney Pietropoalo: | So where did the money come from to which you passed on to your father? |
| Frederick V. McMenimen, III: | Employment. |
| Attorney Pietropaolo: | And can you help me remember who, what the name of the employer was? |
| Frederick V. McMenimen, III: | Prudential. |
| Attorney Pietropaolo: | So income you earned at Prudential you received via check or cash? |
| Frederick V. McMenimen, III: | Check. |
| Attorney Pietropaolo: | And that check went into which account? |

Frederick V. McMenimen, III:  My regular…

Attorney Pietropaolo:          Were you paid by check or direct deposit?

Frederick V. McMenimen, III:  Both.

Attorney Pietropaolo:          Ok and did all of that money get deposited into the same account?

Frederick V. McMenimen, III:  Yes.

Attorney Pietropaolo:          So your Dad, you did not endorse a check to give to your father to deposit. All of the monies were deposited into your checking account.

Frederick V. McMenimen, III:  I believe so, yes.

Attorney Pietropaolo:          And that is the checking account that you have listed in your bankruptcy filing.

Frederick V. McMenimen, III:  I believe so.

Attorney Pietropaolo:          And then you moved the money out to your father?

Frederick V. McMenimen, III:  Could I respectfully ….. I'd like to talk to my attorney before answering the question.  It will take one minute and I think it's important.

                                            ***

Mark P. Cornell              …  We need to move on.  Answer the question….

Frederick V. McMenimen, III:  I can't answer this at this time.

                                            ***

Attorney Pietropaolo:          … Let me ask a different question….If the money was passed from your checking account that you list in your bankruptcy filing to your father and then subsequently returned to the exact same bank account what was the purpose of channeling that money to your father?

Attorney Feinman:              He's already been asked and answered that but one more time, go ahead.

10

| | |
|---|---|
| Frederick V. McMenimen, III: | Money that was paid to me for services provided went to my father, was held and given back to me in small amounts so that if you and your lawsuit went again to freeze my accounts so that I had access to funds to pay my bills. |

***

| | |
|---|---|
| Frederick V. McMenimen, III: | …**I did it after I was deposed by counsel and I did it because they kept freezing my bank accounts and I wanted to protect my family.** (emphasis supplied) |

45.     The Defendant testified that the funds given to the Defendant's father were pursuant to the terms of a revolving loan.

46.     Because the Defendant's attorney indicated that he had a prior engagement, the §341 meeting was suspended with an agreement to reschedule the meeting.

47.     The chapter 7 trustee, Mark Cornell, continued the §341 meeting to May 31, 2012.

48.     On May 14, 2012 following the initial §341 meeting on May 4, 2012 the Defendant amended certain Schedules and certain sections to his Statement of Financial Affairs.

49.     On May 14, 2012 the Defendant amended his response to the Defendant's Statement of Financial Affairs to change the amount of his employment income earned for 2010 from $115,835 to "unknown."  *See* Court Paper #29 (Amended SOFA ¶1).

50.     The Defendant also amended Schedule B to show that he had two checking accounts at Kennebunk Savings Bank, each with a balance of $100.  *See* Court Paper #29 (Amended Schedule B).

51.     On May 30, 2012, with the consent of Mr. Cornell, the chapter 7 trustee, the Defendant filed a Notice of Continuance of the §341 meeting, advising interested parties that the Defendant's §341 meeting was rescheduled for June 12, 2012 at 1:00 p.m.  *See* Court Paper #40.

52.     At 4:33 p.m. on June 11, 2012 the Defendant, through counsel, sent an email to

11

the trustee and Office of United States Trustee indicating that based on the advice of his physician, the Defendant would not be able to appear for the June 12, 2012 §341 meeting.

53.     With the chapter 7 trustee Mark Cornell's consent, the Defendant's §341 meeting scheduled for June 12, 2012 was rescheduled to July 10, 2012 at 9:30 a.m.

54.     The §341 meeting was called on July 10, 2012 but as the questions were not concluded, the chapter 7 trustee announced it would be continued to another date.[5]

*Plaintiff Moves for Rule 2004 Examination of Defendant*

55.     On July 3, 2012 the Plaintiff filed a Motion seeking an Order Authorizing a Rule 2004 Examination of the Defendant.  *See* Court Paper #47.

56.     On July 3, 2012 the Court granted the Plaintiff's Motion for Rule 2004 Examination.  *See* Court Paper #48.

57.     On August 30, 2012 the Plaintiff filed a Motion to Compel the Defendant to comply with the Court's Order Authorizing Rule 2004 Examination.  *See* Court Paper #86.

58.     On September 26, 2012, the Court granted the Plaintiff's Motion to Compel the Defendant to comply with Rule 2004 Examination.  *See* Court Paper #100.

59.     The Defendant has produced certain records in response to the Order Authorizing Rule 2004 Examination and Order Compelling Defendant to Comply generally stating that he has produced all the documents in his custody or control.  *See* Defendant's Response to Motion to Compel, Court Paper #102.

*2004 Examination of Frederick V. McMenimen, Jr.*

60.     With Court approval, the Plaintiff was authorized to conduct a Rule 2004 Examination of the Defendant's father, Frederick V. McMenimen, Jr. ("McMenimen, Jr.") and

---

[5] Neither the continued §341 meeting nor the Rule 2004 Examination of the Defendant has occurred to date.

Coach's Locker Room, LLC.  *See* Court Papers #66, 67, 68, 69.

61.    Pursuant to the Orders Authorizing 2004 Examination, McMenimen, Jr. produced a number of documents for the Plaintiff, both in his individual capacity and as Keeper of the Records of Coach's Locker Room, LLC.

62.    On November 19, 2012 McMenimen, Jr. appeared for examination.[6]

63.    At that examination, McMenimen, Jr. testified that in 2008 he loaned his son, the Defendant, $100,000  ("the loan").

64.    McMenimen, Jr. testified that the purpose of the loan was for the Defendant to pay back taxes to the IRS.[7]

65.    McMenimen, Jr. testified that the loan was memorialized by a promissory note dated March 14, 2008.

66.    The McMenimen, Jr. Note dated March 14, 2008 called for a repayment of the $100,000 over a term of 3 months, with two equal monthly payments of $3000 interest on June 1, 2008 and July 1, 2008.  The balance of the loan was to be paid in full by July 31, 2008 if not sooner.

67.    McMenimen Jr. testified that the Defendant did not repay the loan in full as called for under the Note but there were some payments made on the note.

68.    The Defendant's chapter 7 filing listed Frederick V. McMenimen, Jr. as an unsecured creditor in the amount of $135,000.  *See* Schedule F.

69.    An undated addendum to the McMenimen, Jr. Note provided that

---

[6] That examination was suspended pending the receipt of additional documents.

[7] It is not known at this point why the Defendant had accrued back taxes to the IRS but public records reveal that in 2005 the Defendant won $1.4 million, before taxes, in the New Hampshire lottery.

"both parties to this contract agree that since the loan was not repaid on July 8, 2008 it will remain in full force and effect until paid in full and the interest rate will be two 2% percent per year."

70.    The March 14, 2008 Promissory Note contained no provision for a revolving loan with the Defendant.

71.    At the November 19, 2012 examination, Mr. McMenimen, Jr. testified that after he learned of the lawsuit and pre-petition bank attachment(s) by Passatempo, he invited his son, the Defendant, to use one of his bank accounts at Citizens Bank, the so-called "2188" account.

72.    According to McMenimen, Jr., the 2188 account was initially established for the use of his daughter who was attending college.

73.    According to McMenimen, Jr. the Defendant accepted his father's offer to use his father's 2188 bank account.

74.    McMenimen, Jr. provided the Defendant with at least one checkbook with all blank checks pre-signed by him, for the Defendant's use.

75.    McMenimen, Jr. testified that the Defendant made regular deposits to the 2188 account and had online access as well.  He later learned the Defendant obtained an ATM card for the 2188 account.

76.    Citizens bank records indicate the 2188 account was opened in the name of the Defendant's father on May 29, 2010.

77.    From as early as June 1, 2010 the Defendant used the 2188 account on a regular basis.

78.    McMenimen, Jr. testified that while the Defendant used the 2188 account almost exclusively, McMenimen, Jr. would direct some payments from the 2188 account to himself, usually by online transfer to his account at Citizens Bank, numbered *****4386.

79.     McMenimen, Jr. testified that all payments made to him on the loan from the 2188 account were with the Defendant's express, advance consent.

80.     From June 1, 2010 to May 29, 2012 the Defendant or his father made deposits to the 2188 account in the amount of $600,863.48:

| Date | Deposit Amount to Citizens Bank Account, ******2188 | |
|------|------------------|------|
| 6/1/2010 | $  85,966.26 | |
| 6/1/2010 | $  29,000.00 | From 4386 |
| 6/17/2010 | $  75,000.00 | From 4386 |
| 7/6/2010 | $  18,000.00 | From 4386 |
| 12/2/2010 | $120,000.00 | |
| 3/29/2011 | $135,000.00 | From 4386 |
| 8/18/2011 | $    3,000.00 | From 4386 |
| 8/18/2011 | $    3,000.00 | From 7427 |
| 9/19/2011 | $    3,000.00 | |
| 10/27/2011 | $100,000.00 | |
| 12/1/2011 | $  22,867.22 | |
| 4/9/2012 | $    6,000.00 | |
| 5/9/2012 | $          5.00 | |
| 5/29/2012 | $        25.00 | |
| Total: | $600,863.48 | |

81.     On information and belief, from March 7, 2011 to March 6, 2012, the one year prior to the filing, the Defendant or his father made deposits to the 2188 account controlled by the Defendant totaling $266,867.20.

82.     On information and belief, substantially all of the deposits made to the 2188 account were funds belonging to and/or under the direct control of the Defendant.

83.     McMenimen, Jr. stated that while the bank statements for the 2188 account were mailed to him each month, the statements did not include any of the cancelled checks.[8]

---

[8] For this reason, McMenimen, Jr. said he was unable to provide these cancelled checks to the Plaintiff.  McMenimen, Jr. did execute a release that enabled the Plaintiff to obtain these documents directly from Citizens Bank.

84.     On or before January of 2012 the Defendant sought the advice of experienced bankruptcy counsel, Michael Feinman, Esq.

85.     On January 18, 2012, at the request of and for the benefit of the Defendant, McMenimen, Jr. provided a $5000 retainer to Attorney Michael Feinman by check of the same date, out of the 2188 account.

86.     On January 19, 2012 the Defendant caused to be transferred $24,974 from the 2188 account to his father's Citizens bank account, the 4386 account, reducing the balance in the account to $25.

87.     Based on testimony of McMenimen, Jr. and bank records supplied by Citizens Bank, the Defendant transferred to his father, Frederick V. McMenimen, Jr., at least $91,118.68 in the one year period prior to the Defendant's chapter 7 filing from the 2188 Account.

88.     The Defendant's transfers of funds to the Citizens bank account(s) in the name of his father, Frederick V. McMenimen, Jr., in the two year period prior to the Defendant's chapter 7 filing were transfers outside the ordinary course of business.

89.     The Defendant's transfers of funds to the Citizens bank account(s) of his father Frederick V. McMenimen, Jr. in the two year period prior to the Defendant's chapter 7 filing were transfers to an insider.

90.     McMenimen, Jr. testified that some of the transfers to him from the 2188 account were for payments on account of the March 14, 2008 Note.

91.     The Defendant failed to disclose the transfer of any funds to his father, Frederick V. McMenimen, Jr. in response to Questions 3(a), 3(b), 3(c) or 10 of the Statement of Financial Affairs.

*Coach's Locker Room, LLC*

92.     At the suggestion of the Defendant, Frederick V. McMenimen, Jr. reportedly acquired a bar in Georgetown, Massachusetts later known as "Coach's Locker Room, LLC d/b/a Rock Pond Pub" in December of 2011.

93.     On November 19, 2012, McMenimen, Jr. could not recall what purchase price he paid for the Georgetown bar.

94.     On November 19, 2012 McMenimen, Jr. could not recall from whom the Georgetown bar was purchased.

95.     McMenimen, Jr. testified that a limited liability company was formed to take title to the bar.

96.     McMenimen, Jr. testified that the name of the limited liability company selected was Coach's Locker Room, LLC and that the limited liability company was formed on December 6, 2011.

97.     McMenimen, Jr. testified that his son, the Defendant, prepared all forms for the New Hampshire Secretary of State to establish Coach's Locker Room, LLC.

98.     McMenimen, Jr. testified that his son, the Defendant, was one of the managers of the bar in Georgetown, Massachusetts.

99.     McMenimen, Jr. testified that his son, the Defendant, has check signing authority over the bar's bank account at Optima Bank and that the Defendant keeps the company's books.

100.     McMenimen, Jr. testified that he did not know why his son wrote checks out of Coach's Locker Room, LLC bank account to a gentleman named Kevin Buswell.

101.     Public documents at the New Hampshire Secretary of State indicate that as of December 6, 2011 the Defendant was a Member in Coach's Locker Room, LLC.

102. The Defendant did not disclose his involvement as a Member with Coach's Locker Room, LLC in his chapter 7 filing on March 6, 2012. *See* SOFA, ¶¶18 – 25.

103. At the §341 meeting on May 4, 2012 the Defendant testified that at some point between the formation of the LLC, on December 6, 2011, and the filing of the bankruptcy, March 6, 2012, he resigned from his membership in Coach's Locker Room, LLC.

104. The Defendant testified in response to Mr. Cornell's questions that he returned his membership interest in Coach's Locker Room, LLC to the LLC or his father.

105. The Defendant did not disclose that he transferred his interest in Coach's Locker Room, LLC to either the LLC or to his father.

*Defendant's Indictment*

106. On October 3, 2012 the Defendant was indicted by a federal grand jury in the District of New Hampshire for mail fraud, interstate transportation of goods taken by mail fraud, money laundering, and federal income tax evasion. The matter is captioned *United States* v. *McMenimen*, U.S. District Court, District of New Hampshire, 1:12-CR-130-SM.

*PSB Sports, LLC - Kennebunk Savings Account – McMenimen + PSB Sports*

102. The Defendant formed PSB Sports, LLC as a New Hampshire limited liability company on February 20, 2004. The certificate of formation indicated that the purpose of the company was for the sale of sports equipment and memorabilia.

103. The Defendant was the sole member of PSB Sports, LLC.

104. Public records on file at the New Hampshire Secretary of State indicate PSB Sports, LLC was administratively dissolved on August 29, 2008 but reinstated on March 20, 2011 at the Defendant's request of August 11, 2009.

105. On July 30, 2009 the Defendant opened a bank account in his name at Kennebunk

Savings Bank, account number ****8815.

106.    On August 27, 2009 the Defendant opened a bank account at Kennebunk Savings Bank in the name of PSB Sports, LLC ("the PSB Account"), account number ****3482.

107.    According to bank records for the two Kennebunk accounts described above, provided by the Defendant, the Defendant was the only signatory to the two accounts.

108.    On August 27, 2009 the Defendant deposited a check in the amount of $50,000 drawn on the account of Susan Wagstaff to the PSB Account.

109.    On September 3, 2009 the Defendant caused three treasurer's checks to be drawn from the PSB Account: one for $37,000 payable to Frederick McMenimen; one for $5000 payable to Frederick McMenimen, and one for $7000 payable to New England Patriots.

110.    On October 20, 2009, the Defendant deposited a check in the amount of $60,000 drawn on the account of Susan Wagstaff to the PSB Account.

111.    On October 30, 2009 the Defendant withdrew $58,000 from the PSB Account, and had a treasurer's check issued payable to Frederick McMenimen in the amount of $58,000.

112.    On November 13, 2009 the Defendant deposited $30,000 to the PSB Account, consisting of one check drawn on the account of Susan Wagstaff dated November 13, 2009.

113.    On November 25, 2009 the Defendant withdrew $20,670.34 from the PSB Account and had five (5) treasurer's checks payable as follows: $10,000 payable to Frederick McMenimen; $5000 payable to Town of Exeter; $285.30 payable to Mission; $2885.04 to Bauer; and $2500 to Gary Warriner.

114.    On December 8, 2009 the Defendant withdrew $3476 from the PSB Account and had a treasurer's check issued in that amount payable to the Boston Red Sox.

115.    On January 20, 2010 the Defendant deposited two checks aggregating $70,000 to

19

the PSB Account: one was a check drawn on the account of PM[9] in the amount of $10,000.  The other check was a check drawn on the account of Susan Wagstaff in the amount of $60,000.

116.    On January 20, 2010 the Defendant transferred $10,000 from the PSB Account to his personal account at Kennebunk Savings Bank.

117.    On January 20, 2010 the Defendant withdrew $60,000 from the PSB Account and had a treasurer's check issued in the name of Frederick McMenimen on that date.

118.    On April 8, 2010 the Defendant deposited two checks aggregating $93,000 to the PSB Account: one of the checks was in the amount of $33,000 drawn on the account of JB/CL;[10] the other check deposited was in the amount of $60,000 drawn on the account of Susan Wagstaff.

119.    On April 23, 2010 the Defendant deposited a $28,000 check drawn on the account of GB/JB[11] to the PSB Account.

120.    On April 19, 2010 the Defendant withdrew $90,000 from the PSB Account and had a treasurer's check issued in his name on that date.

121.    On May 21, 2010 the Defendant withdrew $29,000 from the PSB Account and had a treasurer's check issued in his name on that date.

122.    On June 8, 2010 the Defendant deposited a check drawn on the account of Susan Wagstaff in the amount of $95,000 to his PSB Account.

123.    On June 14, 2010 the Defendant withdrew $92,124.50 from the PSB Account and had treasurer's checks issued in the following amounts: $8124.50 to Prudential; $2000 to ? (name illegible); $7000 to New England Patriots; and $75,000 to Frederick McMenimen.

---

[9] The Defendant is aware of the identity of PM.

[10] The Defendant is aware of the identity of JB/CL.

[11] The Defendant is aware of the identity of GB/JB.

124.    On August 31, 2010 the Defendant deposited a $24,000 check drawn on the account of JB/CL to his PSB Account.

125.    On October 19, 2010 the Defendant withdrew $6250 from the PSB account and obtained a treasurer's check payable to Greg Warriner in the amount of $2250; a treasurer's check payable to Wentworth Marina in the amount of $3000 and a treasurer's check payable to Margle & Associates in the amount of $1000.

126.    On November 29, 2010 the Defendant deposited two checks totaling $129,000 to the PSB account: one check, drawn on the account of PM, was in the amount of $80,000.  The second check, for $49,000, was drawn on the account of Susan Wagstaff.

127.    On March 22, 2011 the Defendant deposited $150,000 to the PSB Account.  Bank records indicate that the source of this deposit was a cashier's check from Susan Wagstaff payable to PSB.

128.    On April 19, 2011 the Defendant deposited to the PSB Account a $20,000 check drawn on the account of Frederick McMenimen, Jr. payable to PSB.

129.    On April 19, 2011 the Defendant deposited a $9000 check payable to Prudential in the PSB Account, and withdrew $9000 on the same day.

130.    On June 15, 2011 the Defendant deposited to the PSB Account a check drawn on the account of GB/JB payable to PSB in the amount of $100,000.

131.    On July 26, 2011 the Defendant wrote a check payable to New England Patriots out of the PSB Account in the amount of $7392.

132.    On September 28, 2011 the Defendant deposited to the PSB Account a check payable to PSB Sports, LLC in the amount of $4933 drawn on the account of Jafco Foods, Inc.

133.    On October 19, 2011 the Defendant deposited a check drawn on the account of

Susan Wagstaff in the amount of $120,000 to the PSB Account.

134.    On October 26, 2011 the Defendant wrote a check out of the PSB Account payable to Frederick McMenimen in the amount of $100,000.  This check was deposited to the 2188 account in the name of the Defendant's father but controlled by the Defendant.

135.    From August 27, 2009 to December 29, 2011 the Defendant made deposits of $1,001,155 to the PSB Account:

| Date | Deposit Amounts to PSB Sports, LLC Account |
|------|--------------------------------------------|
| 8/27/09 | $       100 |
| 8/27/09 | $   50,000 |
| 10/20/09 | $   60,000 |
| 11/13/09 | $   30,000 |
| 1/20/10 | $   70,000 |
| 4/8/10 | $   93,000 |
| 4/23/10 | $   28,000 |
| 6/8/10 | $   95,000 |
| 8/31/10 | $   24,000 |
| 11/29/10 | $ 129,000 |
| 12/31/10 | $   19,500 |
| 3/22/11 | $ 150,000 |
| 4/19/11 | $   20,000 |
| 6/22/11 | $ 100,000 |
| 10/03/11 | $     4,933 |
| 10/19/11 | $ 120,000 |
| 11/1/11 | $       622 |
| 12/29/11 | $     7,000 |
| Total: | $1,001,155 |

136.    From March 7, 2011 to March 6, 2012, the one year prior to the filing, the Defendant made deposits of $402,555 to the PSB Account.

137.    In response to numerous questions raised at the May 4, 2012 §341 meeting by Susan Wagstaff's attorney about the disposition of her client's funds, the Defendant refused to answer, asserting his rights guaranteed to him under the Fifth Amendment.

138.    At no time since he filed his chapter 7 case on March 6, 2012 has the Defendant disclosed the amount of money transferred to his father in the ninety (90) days prior to the filing, the one year prior to the filing, or the two years prior to the chapter 7 filing.

### Count I – 11 U.S.C. §727(a)(2)(A)

### Concealment of Property of Debtor Within One Year Prior to Filing

139.    The United States Trustee repeats and incorporates the allegations of each of the foregoing paragraphs as if set forth fully herein.

140.    Section 727(a)(2)(A) of the Bankruptcy Code provides that the Court shall grant a discharge unless, "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed - (A) property of the debtor, within one year before the date of the filing of the petition…" 11 U.S.C. §727(a)(2)(A).

141.    The Defendant had an obligation to truthfully complete his petition and schedules and statement of financial affairs.

142.    Within one year prior to his chapter 7 filing the Defendant transferred, removed, concealed, or permitted to be transferred, removed, or concealed, hundreds of thousands of dollars under his control, with the "intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property."

143.    The Defendant acknowledged at his §341 meeting on May 4, 2012 that he purposefully placed his employment income in the 2188 account in the name of his father but under his control to prevent creditors from attaching his bank accounts.

144.    Bank records for the 2188 account at Citizens Bank in the name of the

23

Defendant's father but controlled by the Defendant show that in the one year period prior to the bankruptcy filing the Defendant deposited $266,867.20 to the 2188 account.

145.     Bank records for the PSB Account at Kennebunk Savings Bank, controlled by the Defendant, show that in the one year period prior to the bankruptcy filing the Defendant deposited $402,555 to that account.

146.     The Plaintiff alleges that the Defendant with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed - (A) property of the debtor, within one year before the date of the filing of the petition.

WHEREFORE, the United States Trustee respectfully requests that the Court:

A.     Grant judgment in favor of the United States Trustee on Count I of the complaint and find that the Defendant, Frederick V. McMenimen, III, is not entitled to a discharge in bankruptcy pursuant to 11 U.S.C. §727(a)(2)(A) and

B.     Grant such other and further relief as the Court deems just and equitable.

## Count II - 11 U.S.C. §727(a)(3)

## Failure to Keep or Preserve Records

147.     The United States Trustee repeats and incorporates the allegations of each of the foregoing paragraphs as if set forth fully herein.

148.     Section 727(a)(3) of the Bankruptcy Code provides that the Debtor's discharge will be denied if the "debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or

24

failure to act was justified under all of the circumstances of the case."  11 U.S.C. §727(a)(3).

149.    The Defendant had an obligation to preserve, maintain, and produce records sufficient to enable creditors to reasonably ascertain his present financial condition and to follow his financial transactions for a reasonable period prior to filing bankruptcy.

150.    The Plaintiff alleges that the Defendant has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained.

WHEREFORE, the United States Trustee respectfully requests that the Court:

A.    Grant judgment in favor of the United States Trustee on Count II of the complaint and find that the Defendant, Frederick V. McMenimen, III, is not entitled to a discharge in bankruptcy pursuant to 11 U.S.C. §727(a)(3) and

B.    Grant such other and further relief as the Court deems just and equitable.

## Count III  - 11 U.S.C. §727(a)(5)

## Failure to Explain Loss of Assets

151.     The United States Trustee repeats and incorporates the allegations of each of the foregoing paragraphs as if set forth fully herein.

152.    Section 727(a)(5) of the Bankruptcy Code provides that the Debtor's discharge will be denied if the "debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. §727(a)(5).

153.    Beginning in 2009 and continuing thereafter, the Defendant made deposits in excess of $1 million to his PSB Account and in excess of $600,000 to the 2188 account.

154.    The Defendant has failed to satisfactorily explain the loss of these assets or deficiency of assets to meet the Defendant's liabilities.

WHEREFORE, the United States Trustee respectfully requests that the Court:

A.    Grant judgment in favor of the United States Trustee on Count III of the complaint and find that the Defendant, Frederick V. McMenimen, III, is not entitled to a discharge in bankruptcy pursuant to 11 U.S.C. §727(a)(5) and

B.    Grant such other and further relief as the Court deems just and equitable.

### Count IV – 11 U.S.C. §727(a)(4)

### False Oath – Failure to Accurately Disclose Income Earned in 2011

155.    The United States Trustee repeats and incorporates the allegations of each of the foregoing paragraphs as if set forth fully herein.

156.    Section 727(a)(4)(A) of the Bankruptcy Code provides that the Court shall grant a discharge unless, "the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath or account ...."  11 U.S.C. §727(a)(4)(A).

157.    The Defendant had an obligation to truthfully complete his petition and schedules and statement of financial affairs and to list all income earned from employment in the year of his chapter 7 filing, as well as the two prior years, and to list income earned other than from employment or operation of a business.

158.    In response to Questions 1 and 2 of the Statement of Financial Affairs, the Defendant disclosed that his income in 2011 was $130,369.15 from employment (SOFA ¶1), and $0 from a source other than employment or operation of a business (SOFA, ¶2).

159.    The Plaintiff alleges that the Defendant had income in 2011 in excess of the income reported on his Statement of Financial Affairs either from employment or from a source

26

other than employment or operation of a business.  *See* SOFA ¶¶1 and/or 2.

160.    The Plaintiff alleges that the Defendant knowingly, fraudulently, and/or with reckless indifference to the truth failed to disclose all of his income earned either from employment or from a source other than employment or operation of a business in 2011 in response to Questions 1 and/or 2 of the Statement of Financial Affairs.

WHEREFORE, the United States Trustee respectfully requests that the Court:

A.    Grant judgment in favor of the United States Trustee on Count IV of the complaint and find that the Defendant, Frederick V. McMenimen, III, is not entitled to a discharge in bankruptcy pursuant to 11 U.S.C. §727(a)(4) and

B.    Grant such other and further relief as the Court deems just and equitable.

### Count V – 11 U.S.C. §727(a)(4)

### False Oath – Failure to Accurately Disclose Income Earned in 2010

161.    The United States Trustee repeats and incorporates the allegations of each of the foregoing paragraphs as if set forth fully herein.

162.    Section 727(a)(4)(A) of the Bankruptcy Code provides that the Court shall grant a discharge unless, "the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath or account ...."  11 U.S.C. §727(a)(4)(A).

163.    The Defendant had an obligation to truthfully complete his petition and schedules and statement of financial affairs and to list all income earned from employment in the year of his chapter 7 filing, as well as the two prior years, and to list income earned other than from employment or operation of a business.

164.    In response to Questions 1 and 2 of the Statement of Financial Affairs, the Defendant disclosed that his income in 2010 was $115,835 from employment (SOFA, ¶1), and

$0 from a source other than employment or operation of a business (SOFA, ¶2).

165.    The Plaintiff alleges that the Defendant had income in 2010 in excess of the income reported on his Statement of Financial Affairs either from employment or from a source other than employment or operation of a business.  *See* SOFA ¶¶1 and/or 2.

166.    The Plaintiff alleges that the Defendant knowingly, fraudulently, and/or with reckless indifference to the truth failed to disclose all of his income earned either from employment or from a source other than employment or operation of a business in 2010 in response to Questions 1 and 2 of the Statement of Financial Affairs.

WHEREFORE, the United States Trustee respectfully requests that the Court:

A.    Grant judgment in favor of the United States Trustee on Count V of the complaint and find that the Defendant, Frederick V. McMenimen, III, is not entitled to a discharge in bankruptcy pursuant to 11 U.S.C. §727(a)(4) and

B.    Grant such other and further relief as the Court deems just and equitable.

### Count VI – 11 U.S.C. §727(a)(4)

### False Oath – Failure to Disclose Transfers to Frederick V. McMenimen, Jr. [SOFA ¶3(b)]

167.    The United States Trustee repeats and incorporates the allegations of each of the foregoing paragraphs as if set forth fully herein.

168.    Section 727(a)(4)(A) of the Bankruptcy Code provides that the Court shall grant a discharge unless, "the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath or account ...."  11 U.S.C. §727(a)(4)(A).

169.    The Defendant had an obligation to truthfully complete his petition and schedules and statement of financial affairs.

170.    In response to Question 3(b) of the Statement of Financial Affairs, the Defendant

disclosed no payments made to a creditor in the ninety (90) days prior to the filing aggregating $5850 or more.

171.     The Plaintiff alleges based on testimony provided by McMenimen, Jr., that the Defendant, or his father at the Defendant's direction, made at least four transfers to his father, Frederick V. McMenimen, Jr.'s account, the so-called 4386 account, aggregating $51,512.08 in the 90 days prior to the filing from the 2188 Account.

172.     On information and belief the Defendant knowingly, fraudulently, and/or with reckless indifference to the truth failed to disclose the transfers to Frederick V. McMeninen, Jr. in the ninety (90) days prior to the chapter 7 filing in response to Question 3(b) of the Statement of Financial Affairs.

173.     The Plaintiff alleges that the Defendant's response to Question 3(b) of the Statement of Financial Affairs was false.

174.     The Plaintiff alleges that the Defendant's response to Question 3(b) of the Statement of Financial Affairs was false, and was made knowingly, fraudulently, and/or with reckless indifference to the truth.

WHEREFORE, the United States Trustee respectfully requests that the Court:

A.     Grant judgment in favor of the United States Trustee on Count VI of the complaint and find that the Defendant, Frederick V. McMenimen, III, is not entitled to a discharge in bankruptcy pursuant to 11 U.S.C. §727(a)(4) and

B.     Grant such other and further relief as the Court deems just and equitable.

## Count VII – 11 U.S.C. §727(a)(4)

## False Oath – Failure to Disclose Transfers to Frederick V. McMenimen, Jr. [SOFA ¶3(c)]

175.     The United States Trustee repeats and incorporates the allegations of each of the

foregoing paragraphs as if set forth fully herein.

176.    Section 727(a)(4)(A) of the Bankruptcy Code provides that the Court shall grant a discharge unless, "the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath or account ...."  11 U.S.C. §727(a)(4)(A).

177.    The Defendant had an obligation to truthfully complete his petition and schedules and statement of financial affairs.

178.    In response to Question 3(c) of the Statement of Financial Affairs, the Defendant disclosed no payments made to a creditor that was an insider in the year prior to the filing other than the payment to Agnes Sughrue, his mother.

179.    The Plaintiff alleges based on testimony provided by McMenimen, Jr. and bank statements from Citizens Bank, that the Defendant transferred to his father, Frederick V. McMenimen, Jr., at least $91,118.68 in the one year period prior to the Defendant's chapter 7 filing from the 2188 Account.

180.    The Plaintiff alleges that the Defendant also made a transfer of $100,000 to his father, Frederick V. McMeninen, Jr., from the PSB Account to the 2188 Account, on October 26, 2011, within one year of the chapter 7 filing.

181.    On information and belief the Defendant knowingly, fraudulently, and/or with reckless indifference to the truth failed to disclose the transfers to Frederick V. McMenimen, Jr. in the one year period prior to the chapter 7 filing in response to Question 3(c) of the Statement of Financial Affairs.

182.    The Plaintiff alleges that the Defendant's response to Question 3(c) of the Statement of Financial Affairs was false, and made knowingly, fraudulently, and/or with reckless indifference to the truth.

WHEREFORE, the United States Trustee respectfully requests that the Court:

A.      Grant judgment in favor of the United States Trustee on Count VII of the complaint and find that the Defendant, Frederick V. McMenimen, III, is not entitled to a discharge in bankruptcy pursuant to 11 U.S.C. §727(a)(4) and

B.      Grant such other and further relief as the Court deems just and equitable.

### Count VIII – 11 U.S.C. §727(a)(4)

### False Oath – Failure to Disclose Transfers to Frederick V. McMenimen, Jr. Outside Ordinary Course of Business – [SOFA ¶10]

183.    The United States Trustee repeats and incorporates the allegations of each of the foregoing paragraphs as if set forth fully herein.

184.    Section 727(a)(4)(A) of the Bankruptcy Code provides that the Court shall grant a discharge unless, "the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath or account ...."  11 U.S.C. §727(a)(4)(A).

185.    The Defendant had an obligation to truthfully complete his petition and schedules and statement of financial affairs.

186.    In response to Question 10 of the Statement of Financial Affairs, the Defendant disclosed no transfers outside the ordinary course of affairs to his father, Frederick V. McMenimen, Jr., in the two years prior to the filing.

187.    The Plaintiff alleges based on testimony provided by McMenimen, Jr., the Defendant transferred to his father, Frederick V. McMenimen, Jr., at least $91,118.68 in just the one year period prior to the Defendant's chapter 7 filing from the 2188 Account.

188.    The Plaintiff alleges that the Defendant also made on October 26, 2011 a transfer of $100,000 to his father, Frederick V. McMeninen, Jr., from the PSB account to the 2188

31

account, within one year of the chapter 7 filing.

189.    As of this date the Plaintiff has not determined the full extent of transfers made by the Defendant to his father in the two years prior to the filing.

190.    The Defendant's transfers of funds to his father in the two years prior to the chapter 7 filing were transfers outside the ordinary course of business.

191.    On information and belief the Defendant knowingly, fraudulently, and/or with reckless indifference to the truth failed to disclose the transfers made to Frederick V. McMenimen, Jr. in the two year period prior to the chapter 7 filing in response to Question 10 of the Statement of Financial Affairs.

192.    The Plaintiff alleges that the Defendant's response to Question 10 of the Statement of Financial Affairs was false and made knowingly, fraudulently, and/or with reckless indifference to the truth.

WHEREFORE, the United States Trustee respectfully requests that the Court:

A.    Grant judgment in favor of the United States Trustee on Count VIII of the complaint and find that the Defendant, Frederick V. McMenimen, III, is not entitled to a discharge in bankruptcy pursuant to 11 U.S.C. §727(a)(4) and

B.    Grant such other and further relief as the Court deems just and equitable.

### Count IX – 11 U.S.C. §727(a)(4)

### False Oath – Failure to Disclose Membership Interest in Coach's Locker Room, LLC

### And Dates of Operation of PSB Sports, LLC

193.    The United States Trustee repeats and incorporates the allegations of each of the foregoing paragraphs as if set forth fully herein.

194.    Section 727(a)(4)(A) of the Bankruptcy Code provides that the Court shall grant a

discharge unless, "the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath or account ...." 11 U.S.C. §727(a)(4)(A).

195.    The Defendant had an obligation to truthfully complete his petition and schedules and statement of financial affairs.

196.    In response to Question 18 of the Statement of Financial Affairs, the Defendant disclosed that in the six years prior to the filing he had been involved in only 2 businesses:

| Name | Address | Nature of Business | Beginning/Ending Dates |
|------|---------|--------------------|------------------------|
| Custom Financial, LLC | Peabody, MA | financial services | 2001-2006 |
| PSB Sports, LLC | Exeter, NH | sporting goods | 2006-2007 |

197.    At the §341 examination the chapter 7 trustee, Mark Cornell, pointed out that records at the Secretary of State indicated the Defendant was a Member of Coach's Locker Room, LLC at the time of the filing.

198.    Only following pointed questions of Mr. Cornell did the Defendant admit he was a Member in Coach's Locker Room, LLC at the time of the chapter 7 filing.

199.    While the Defendant filed an Amendment to his Schedules on May 14, 2012 and referenced Coach's Locker Room, LLC on Schedule B, he did not amend his response to Question 18 to disclose that he was a Member in Coach's Locker Room, LLC within the six year prior to his chapter 7 filing.  The Defendant also did not disclose that he reportedly transferred his Membership interest in Coach's Locker Room, LLC on the eve of his bankruptcy filing.

200.    The Defendant's response to Question 18 of the Statement of Financial Affairs is also false in that the Defendant operated PSB Sports, LLC for a period longer than 2006-2007.

201.    Nothing in the Defendant's petition, schedules or statement of financial affairs as filed on March 6, 2012 discloses that the Defendant set up a bank account in the name of PSB

Sports, LLC at Kennebunk Savings Bank on August 27, 2009, and controlled said account through January 17, 2012, using it for his personal financial transactions.

202.     The Plaintiff alleges that PSB Sports, LLC is the alter ego of the Defendant.

203.     The Plaintiff alleges that the Defendant knowingly, fraudulently, and/or with reckless indifference to the truth failed to disclose that he was a Member in Coach's Locker Room, LLC in response to Question 18 of the Statement of Financial Affairs.

204.     The Plaintiff alleges that the Defendant's response to Question 18 of the Statement of Financial Affairs was also false in that he stated he terminated operation of PSB Sports, LLC in 2007, yet took steps to reinstate the limited liability company and opened a bank account in the name of PSB Sports, LLC into which was deposited in excess of $1 million dollars from August of 2009 through January of 2012.

205.     The Plaintiff alleges that the Defendant's response to Question 18 of the Statement of Financial Affairs was materially false.

206.     The Plaintiff alleges that the Defendant's response to Question 18 of the Statement of Financial Affairs was made knowingly, fraudulently, and/or with reckless indifference to the truth.

WHEREFORE, the United States Trustee respectfully requests that the Court:

A.     Grant judgment in favor of the United States Trustee on Count IX of the complaint and find that the Defendant, Frederick V. McMenimen, III, is not entitled to a discharge in bankruptcy pursuant to 11 U.S.C. §727(a)(4) and

B.     Grant such other and further relief as the Court deems just and equitable.

## Count X – 11 U.S.C. §727(a)(4)

## False Oath – Schedule B

207.    The United States Trustee repeats and incorporates the allegations of each of the foregoing paragraphs as if set forth fully herein.

208.    Section 727(a)(4)(A) of the Bankruptcy Code provides that the Court shall grant a discharge unless, "the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath or account ...."  11 U.S.C. §727(a)(4)(A).

209.    The Defendant had an obligation to truthfully complete his petition and schedules and statement of financial affairs.

210.    In response to Schedule B 2 as initially filed the Defendant disclosed only two bank accounts, a checking and savings account at Citizens Bank.

211.    Only following pointed questions of Mr. Cornell and the creditors at the §341 meeting on May 4, 2012 did the Defendant admit that he had bank accounts at Kennebunk Savings Bank in Maine: one in his personal name and one in the name of PSB Sports, LLC, opened on July 30, 2009 and August 27, 2009 respectively.

212.    The Defendant continued to use these Kennebunk Savings Bank accounts for his own personal transactions through January 17, 2012, when, the records show, Kennebunk Savings Bank was served with a "summons to trustee."

213.    The Plaintiff alleges that the Defendant knowingly, fraudulently, and/or with reckless indifference to the truth failed to disclose the existence of the Kennebunk Savings Accounts in his bankruptcy filing made on March 6, 2012.

214.    The Plaintiff alleges that the Defendant's initial bankruptcy filing with respect to Schedule B was false.

215.    The Plaintiff alleges that the Defendant's response to Schedule B in his initial filing on March 6, 2012 with respect to bank accounts was made knowingly, fraudulently, and/or with reckless indifference to the truth.

WHEREFORE, the United States Trustee respectfully requests that the Court:

A.    Grant judgment in favor of the United States Trustee on Count X of the complaint and find that the Defendant, Frederick V. McMenimen, III, is not entitled to a discharge in bankruptcy pursuant to 11 U.S.C. §727(a)(4) and

B.    Grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,

William K. Harrington
UNITED STATES TRUSTEE


By:    /s/ Geraldine Karonis
Geraldine Karonis
Assistant United States Trustee
1000 Elm Street, Suite 605
Manchester, NH 03101
(603) 666-7908
Bnh  01853
Email: Geraldine.L.Karonis@usdoj.gov

Dated: November 29, 2012